### In re ADVENTIST LIVING CENTERS, INC., Debtor.

Bankruptcy No. 90 B 21285.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Dec. 18, 1991.

See also 737 B.R. 692.

Louis Levit, Ross & Hardies, Chicago, Ill., for debtor.

John H. Ward, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for Unsecured Creditors Committee.

Lawrence Fisher, D'Ancona & Pflaum, Chicago, Ill., for Ernst & Young.

## MEMORANDUM OPINION REGARDING THE FIRST APPLICATION OF ROSS & HARDIES FOR INTERIM ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

SUSAN PIERSON SONDERBY,
Bankruptcy Judge.

This matter comes before the Court on the First Application of Ross & Hardies ("R & H"), attorney for the Debtor, Adventist Living Centers, Inc., for Interim Compensation and Reimbursement of Expenses, the Objection of the First Trust National Association ("First Trust") to the Application, the Objection of the Unsecured Creditors' Committee to the Application and the Supplement to the Application. Now, therefore, for the reasons set forth below, the Application is granted in part and denied in part.

### Facts

On November 14, 1990, the Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On November 27, 1990, the Court authorized the retention of Ross & Hardies as attorney for the Debtor. On May 9, 1991, R & H filed its First Application for Interim Compensation and Reimbursement of Expenses requesting $227,368.30 in fees and $10,497.40 for expenses for the time period from October 22, 1990 through February 28, 1991.

Prior to filing, R & H received a $100,500 retainer. Pursuant to the terms of the Cash Collateral Order, the Debtor has accumulated approximately $295,000 in a segregated account established for the deposit of all funds budgeted for professional fees. R & H requests that the Court allow it to apply $75,500 of the retainer against the fees awarded.

On June 11, 1991, First Trust filed its Objection to R & H's First Application. In its Objection First Trust alleges that R & H seeks compensation for duplicative services and intraoffice conferences. Specifically, it alleges that R & H billed for several occasions where two attorneys attended the same meeting or conference. Second, First Trust objects to the frequent intraoffice conferences between the attorneys and paralegals. Third, First Trust objects to the reasonableness of the compensation requested for services provided in the areas of case administration, creditors and claims, statements and schedules, utility stay, executory contracts, unexpired leases, cash collateral financing, health care counseling, malpractice insurance and health insurance.

In general, First Trust alleges that the case is not overly complex and does not involve any complex issues of law. In fact, First Trust states that the parties have resolved most of the major issues through negotiation. Lastly, First Trust requests that the Court impose a 25% holdback pend-

ing confirmation of a plan of reorganization.

The Unsecured Creditors' Committee also filed an Objection to the R & H Application. In its Objection, the Committee alleges that the format of the application is not designed to inform creditors and parties in interest of what compensation is being sought for which services. The Committee also makes certain specific objections. First, the Committee alleges that R & H billed for 128.1 hours of pre-petition time which constitutes approximately 8.5% of the entire time spent on the case. Second, the Committee states that the time spent preparing the fee application is included in the Section titled Case Administration and not broken down separately. Third, the Committee contends that the Case Administration section and the Statements and Schedules section overlap. Fourth, the Committee points out that there are a significant amount of intraoffice conferences and that on Page 25 there are two duplicate time entries for Mr. Levit. Lastly, the Committee states that R & H billed for four attorneys to attend the first meeting of creditors at an aggregate hourly rate of $675 to $730 which is excessive.

Based on the alleged organizational problems with the Application, the Committee requests a 33% holdback. The Committee also requests that R & H apply all of its retainer prior to receiving any funds.

*Analysis*

Attorney's Fees

to Section 330 of the Bankruptcy Code, the Court may award reasonable compensation to a professional person employed under Section 327 and Section 1103 of the Bankruptcy Code for the actual necessary services rendered. The award is based on the nature, extent and value of such services, the time spent on such services, and the cost of comparable services other than in a bankruptcy case. Similarly, Section 331 of the Bankruptcy Code allows the Court to award interim compensation to any professional employed under Section 327 or Section 1103

of the Bankruptcy Code. Accordingly, the Court may award reasonable compensation to the Debtor's counsel for the actual, necessary services rendered.

entity seeking compensation under Section 330 or Section 331 of the Bankruptcy Code must file with the court, pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure, "an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016. The applicant carries the burden of establishing the reasonableness of its fees. *In re Chas. A. Stevens & Co.*, 105 B.R. 866, 870 (Bankr. N.D.Ill.1989), *citing, In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr.N.D.Ill. 1987); *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). Additionally, the application must stand on its own merits. *See In re Wildman*, 72 B.R. 700 (Bankr.N.D.Ill.1987).

*A. Lumping*

proper fee application must list each activity, its date, the attorney who performed the work, a description of the nature and substance of the work performed and the time spent on the work." *Pettibone*, 74 B.R. at 301, *citing, Lindberg Products*, 50 B.R. at 221–22. An applicant may not "lump" several services into one entry. *Pettibone*, 74 B.R. at 302; *In re Horn & Hardart Baking Co.*, 30 B.R. 938, 944 (Bankr.E.D.Pa.1983). Each service should be listed in a separate entry. *In re NRG Resources, Inc.*, 64 B.R. 643, 654 (W.D.La.1986). When an applicant lumps together services, the court is unable to ascertain whether the time spent is reasonable. Accordingly, the applicant should not be compensated for those entries which contain "lumping." *See Pettibone*, 74 B.R. at 302; *In re Affinito & Son, Inc.*, 63 B.R. 495, 498 (Bankr.W.D.Pa.1986); *Horn & Hardart*, 30 B.R. at 944.

Court notes with some concern that there is a substantial amount of lumping in R & H's First Application for Interim Compensation. The entries set forth below lump several services regarding different

tasks into one entry. The Application also contains a substantial number of entries that lump several services regarding the same task into one entry. Based on R & H's representation in the Supplement that it was not feasible to breakdown the lumping in this Application but that further lumping would cease, the Court did not reduce the fees requested in this Application for those entries which lumped together several services regarding the same task. In all future applications, however, the Court will not allow any lumping.

In this case, the Court has reviewed the Application and Supplement submitted and will reduce by fifty percent (50%) the amount of fees requested for the following entries because of lumping:

### Case Administration

| Date | Description | | |
|------|-------------|---|---|
| 10/26/90 | Conferred by telephone with Mr. Snyder who advised that Board had approved our retention, discussed steps to be taken, both in immediate future and down the road. Conferred with Mr. Smith and Mr. Thomas, representatives of indenture trustees, re our retention, contemplated Chapter 11 and necessity of attempting to work out cash collateral order. Arranged for meeting in Chicago, on Tuesday morning, October 30. Conferred later with Mr. Grabscheid and Mr. Snyder by telephone. Advised them of discussion with trustees and preparation for Tuesday meeting; conferred with Mr. Pristave and Mr. Riley re our retention and potential need for services from Health Care Department; discussed immediate inquiries to be made, both pre- and post-filing. | LWL | 3.00 |
| 10/29/90 | Conferred with Mr. Fishman re overall administration of proceedings; conferred with Ms. Smith re preparation of initial papers and background of case. Conferred by telephone with Mr. Snyder re overall concerns, preparation for meeting the following day and proposed meeting with employees, as well as press releases to be given out at time of filing. | LWL | 1.50 |
| 10/29/90 | Prepare petition, motion for leave to retain Ross & Hardies, order re same; confer with L. Levit and R. Fishman re same. | ACS | 2.70 |
| 11/01/90 | Multiple conversations with Mike Goebel and Chuck Snyder re Chapter 11 filing ramifications, employee relations and meeting with key employees. Spoke to Mr. Graham re creditor's magnetic tape and paperwork for filing. | RMF | 1.40 |
| 11/05/90 | Preparation of petition, creditors' list, motion to retain counsel, schedules and orders; phone call to M. Goebel re exhibit A to petition; prepare secretary's certificate re board resolution; conference with R. Fishman, B. Graham re same; phone call to N. Ross re Ernst & Young affidavit. | ACS | 2.80 |
| 11/06/90 | Conference with R. Fishman re filing Chapter 11 petition; prepare motion to retain Ernst & Young; phone call to N. Ross re same; phone calls to M. Goebel, D. Brummel and K. Brian re preparation of exhibit A to petition; conference with B. Graham re same. | ACS | 2.80 |
| 11/07/90 | Further work on preparation of petition, motions, creditor list and supporting documents for filing of Chapter 11. Further conference with Ms. Smith and Mr. Fishman re same. Discussion with Mr. Levit re same. | BMG | 1.20 |
| 11/07/90 | Prepare motion for leave to retain accountants (Ernst & Young); revise exhibit A to petition pursuant to K. Brian's comments; conference with B. Graham re same; phone call to K. Brian re preparation of petition and miscellaneous motions. | ACS | 2.80 |

| Date | Description | Atty | Hours |
|---|---|---|---|
| 11/08/90 | Further work on making sure everything is in order for filing of petition. Reviewed motions to retain accountants and attorneys; spoke to Mr. Fishman re same. Phone call to Mr. Burrill at ALC re creditor list and magnetic tape. | BMG | 1.10 |
| 11/14/90 | Had changes made to petition, conferred with Mr. Levit re same; filed petition; working with Mr. Levit on preparing motions for presentation tomorrow, memo drafted re dates to be watched, conferred with Adrian Smith re filing. | BMG | 5.50 |
| 11/15/90 | Conferred with Mr. Goebel and Mr. Snyder re preparation for hearing at 1:30 before Judge Sonderby; conferred with Mr. Graham re service of various motions; conferred with Mr. Harvalis re motions up today and re administration of case generally; conferred with various creditors and parties in interest re administration of the case. | LWL | 2.50 |
| 11/15/90 | Filed and served motions to retain and re cash collateral, attended hearing re cash collateral and helped Mr. Levit prepare for same. | BMG | 4.50 |
| 11/15/90 | Phone call to K. Brian re Chapter 11 filing; review motions, orders and petition; conference with K. Kambic re same. | ACS | 0.60 |
| 11/19/90 | Reviewed documents and pleadings in file; conferred with A. Smith re agenda; telephone conference with D. Ruggles re notice of pleadings; drafted letter to M. Goebel re U.S. Trustee's instructions. | KLK | 4.40 |
| 11/19/90 | Conference with K. Kambic re insurance issues and miscellaneous matters re case administration; prepare letter to M. Goebel re U.S. Trustee reporting requirements; conference with K. Kambic re same; phone conference with N. Ross (Ernst & Young) re bookkeeping and accounting issues. | ACS | 2.80 |
| 11/20/90 | Reviewed and revised letter to M. Goebel re Trustee's instructions; conferred with A. Smith re same; conferred with A. Smith re Medicare issues and Section 341 notice issues; conferred with J. Riley re Medicare Act; research and analysis re same; conferred with B. Graham re notice issue; telephone conference with M. Goebel re Trustee's operating instructions. | KLK | 3.40 |
| 11/20/90 | Revise letter to M. Goebel re U.S. Trustee reporting and operating requirements; phone conference with D. Brummel re same; conference with K. Kambic re court hearing and client requests for information concerning maintenance of records as debtor in possession; conference with R. Fishman re same. | ACS | 2.80 |
| 11/21/90 | Call Karen Brian re meeting on statements and schedules, spoke to Ms. Kambic re bank accounts and list of authorized depositories—spoke to Ms. Shaw re problem with utility, spoke to Mr. Smith's office re magnetic tape for bondholders, spoke to Ms. Kambic and Ms. Smith re material requested by Ernst & Young, call to Mr. Tamosiunas re same, letter drafted and messengered to same—call to Mr. Olsen at Katten, Muchin re list of pending litigation. | BMG | 3.80 |
| 11/21/90 | Phone conference with M. Burack at Multistate Management re insurance coverage and threatened cancellation of excess insurance coverage; phone conference with K. Brian re preparation of schedules and accounting issues; phone conference with N. Ross and D. Tamiousuas (Ernst & Young) re accounting issues relating to debtor's books and records and U.S. Trustee's reporting requirements; review letter to U.S. Trustee re bank accounts and conference with K. Kambic re same. | ACS | 3.60 |
| 11/26/90 | Spoke to Ms. Kambic and calls to Mr. Wakefield at the Trustee's office re bank accounts. Conversations with K. | BMG | 3.30 |

| | | | |
|---|---|---|---|
| | Brian re statement and schedules with Mr. Burrill re magnetic tape. Drafted motions to extend time re schedules and to send 341 notice; discussed magnetic tape issues with Mr. Levit and Mr. Fishman. | | |
| 11/26/90 | Conferred with L. Levit and R. Fishman re motion to limit notice; conferred with B. Graham re motion to extend statements and schedules; conferred with A. Smith and M. Goebel re notice and statements; conferred with A. Smith re letter to insurance broker. | KLK | 3.30 |
| 11/26/90 | Confer with K. Kambic re insurance cancellation issues; phone conference with J. Franklin re insurance cancellation and related issues; confer with M. Goebel re same and miscellaneous issues; review and revise stay violation letters (insurance, broker-worker's compensation policy and alarm systems); confer with K. Kambic re same. | ACS | 4.70 |
| 11/27/90 | Conferred with K. Kambic re motions to extend time re magnetic tape and statements and schedules; drafted magnetic tape motion; had same served and filed; drafted orders for motions. | BMG | 2.50 |
| 11/27/90 | Phone conferences with R. Wakefield (U.S. Trustee's Office), D. Tamosunas and confer with K. Kambic re bank accounts, letter to M. Goebel re miscellaneous issues. | ACS | 1.30 |
| 11/28/90 | Spoke to K. Kambic re motions up tomorrow and drafted one more order for same; call to Mr. Olson at Katten, Muchin. | BMG | 3.00 |
| 11/29/90 | Reviewed correspondence from Mr. Smith. Conferred with Mr. Graham re filing of tape containing names of bond holders. Reviewed bond and indenture trustee statement under Rule 2019. Conferred re arranging for time and place of meeting of creditors and sending notice thereof. | LWL | 1.00 |
| 11/29/90 | Conferred with Ms. Smith re magnetic tape from Chapman & Cutler; telephone conference with K. Brian re same; drafted letter to J. Burril re same; telephone conference with M. Goebel re meeting 20 largest creditors; went to court re motion to extend time by which to file magnetic tape. | KLK | 1.10 |
| 11/29/90 | Spoke to Ms. Kambic, Mr. Levit, and Mr. Fishman re magnetic tape issues. Sent copy of petition to Mr. Goebel. Call to the court's notice department re magnetic tape. | BMG | 1.00 |
| 12/03/90 | Conferred with Ms. Smith re motion to retain special counsel; telephone conference with K. Brian re patient refunds and the magnetic tape; conferred with Mr. Fishman re same; conferred with Ms. Smith re Motion re Patient Refunds. | KLK | 1.00 |
| 12/03/90 | Phone conference with O. Kirk and D. Tamosuinas re account management system and matters re case administration; confer with K. Kambic re additions to service list. | ACS | 0.50 |
| 12/04/90 | Telephone conference with the following attorneys re information needed for motion to retain special counsel: R. Shannon, D. Lottus, J. Goldberg, R. Gitchell, A. Johnson and J. Grubbs; telephone conference with Ms. Smith and Ernst & Young re bank accounts; reconferred with Ernst & Young re same; prepared exhibits for letter to U.S. Trustee's Office re same. | KLK | 1.50 |
| 12/04/90 | Phone conferences with O. Kirk and B. Marozos and K. Kambic re same; confer with C. Snyder, M. Goebel and L. Levit re meeting with 20 largest creditors. | ACS | 1.10 |
| 12/05/90 | Arranged to get entered copies of orders entered yesterday re cash collateral, etc. from Tina Devine of Judge Sonderby's office. Conferred with Ms. Kambic and Mr. Levit re | BMG | 0.90 |

| Date | Description | | |
|---|---|---|---|
| | statements and schedules. Helping Ms. Kambic with simple motion to reject contracts. | | |
| 12/05/90 | Telephone conference with K. Brian and Mr. Fishman re magnetic tape; conferred with Mr. Levit and Mr. Graham re 341 meeting; telephone conference with Ms. Smith and K. Brian re twenty largest creditors list; drafted letter to R. Friedman re bank accounts; conferred with K. Brian re accounts. | KLK | 2.50 |
| 12/06/90 | Calls to various meeting halls for price and availability information regarding Section 341 meeting. Calls to the supervisor of the bankruptcy notice department re form of notice, etc. Spoke to Ms. Kambic re same. Drafted letter to Mr. Filipowski, spoke to Mr. Burrill re Magnetic Tape. | BMG | 1.90 |
| 12/06/90 | Telephone conference with K. Brian and M. Goebel re tape; conferred with Mr. Graham re same; conferred with Messrs. Graham, Levit and Friedman re 341 meeting; drafted motion re notice and location of meeting. | KLK | 1.50 |
| 12/07/90 | Reviewed and revised letter to R. Friedman re bank accounts; telephone conference with Illinois Self–Advisory Board re status of case; conferred with Mr. Levit re Supplemental Service List; conferred with Mr. Levit re notice motion; reviewed and revised notice motion. | KLK | 1.00 |
| 12/10/90 | Coordinated filing of magnetic tape; drafted notice of filing for same, filed same at the bankruptcy court with the head of the notice department. Calls to Palmer House re changing date of 341 meeting. Discussed same with Ms. Kambic and Mr. Levit. | BMG | 1.50 |
| 12/10/90 | Conferred with Mr. Levit re 341 meeting date; telephone conferences with K. Brian and Mr. Snyder's office re same; telephone conference with Palmer House re reservations; drafted order re notice of 341 Meeting; conferred with Ms. Smith re order; telephone conference with K. Brian re magnetic tape, conferred with Mr. Graham re same. | KLK | 2.30 |
| 12/11/90 | Drafted letter to K. Brian re notice motion; telephone conference with R. Gitchell re Larson claim; appeared in court re motion to send notice of 341 meeting. | KLK | 2.10 |
| 12/12/90 | Telephone conference with K. Brian re 341 notice; conferred with Mr. Graham and Mr. Fishman re same; conferred with Mr. Graham re monthly report. | KLK | 0.60 |
| 12/13/90 | Telephone conference with K. Brian re operating reports; conferred with B. Graham re same; telephone conference with R. Cicambrone re 341 meeting; drafted letters to special counsel re affidavit, initial draft of motions to retain special counsel. | KLK | 2.80 |
| 12/14/90 | Further discussions with Denise Adducci at the Palmer House re 341 meeting set up; conferred with Mr. Levit and Ms. Kambic re same. Spoke to Ms. Kambic re various other matters. | BMG | 1.00 |
| 12/14/90 | Telephone conference with D. Loftus re retention; drafted letter to Loftus re same; reviewed motion to retain Beck; conferred with Mr. Graham re 341 Meeting. | KLK | 1.70 |
| 12/17/90 | Confer with K. Kambic re insurance certificates; review letter to R. Friedman re DIP accounts; revise motion(s) to retain special counsel; confer with K. Kambic re same. | ACS | 1.60 |
| 12/18/90 | More discussions with the Palmer House, Mr. Levit and Ms. Kambic re set up of meeting of creditors. Spoke to Ms. Kambic re filing of monthly report and certificate of service for 341 notice, began draft of same. | BMG | 1.10 |
| 12/18/90 | Telephone conference with K. Brian re list of homes, deposit accounts and pre-petition claims; final review of retention motions; drafted letter to special counsel re same. | KLK | 1.00 |

| Date | Description | Init. | Hours |
|---|---|---|---|
| 12/20/90 | Telephone conference with D. Tracey re Larson; conferred with Ms. Smith re same; initial draft of motion to compromise same; drafted order re PROS motion; drafted order re Silha motion; drafted letter to R. Tutweiler re petty cash. | KLK | 2.80 |
| 01/07/91 | Reviewed present drafts of Schedules and Statement of Affairs. Met in our office with Mr. Fishman, Ms. Kambic, Ms. Smith, Mr. Goebel and Mr. Snyder (later joined by Mr. Andvick and Mr. O'Keefe) in order to prepare for the 341 Meeting. Advised generally of procedures to be followed, nature of questions to be expected, etc. Also conferred privately with Mr. Snyder and Mr. Goebel regarding issues to come up at 341 Meeting. Attended and participated in 341 Meeting; responded to numerous questions by individual bond holders, etc.; conferred with our parties after the meeting re general reaction to what had taken place. | LWL | 5.00 |
| 01/07/91 | Attended pre-Section 341 meeting with M. Goebel, C. Snyder; Ms. Smith, Mr. Levit, Mr. Fishman, and Ms. Shaw; reviewed settlement agreement re RICO action. | KLK | 2.30 |
| 01/09/91 | Call and letter drafted to Ms. Adducci re problems with meeting set up. Spoke to R. Fishman and L. Levit re same. Notice of stay faxed to creditor requesting same; sent cash collateral order to Oppenheimer, et al. in Minnesota. | BMG | 2.00 |
| 01/28/91 | Drafted letter to creditor and conferred with A. Smith re status of certain projects. | BMG | 0.80 |
| 02/04/91 | Spoke to Arlene at ALC re certain material she needed and messengered same to her; spoke to A. Smith re same; phone conference with J. Franklin re additional health care claims; spoke to K. Kambic re status of case; reviewed UCC search results from Pennsylvania. | BMG | 1.30 |
| 02/04/91 | Phone conferences with D. Brummel and confer with K. Kambic re retention of Zelenkofske accounting firm; confer with R. Fishman re same; confer with K. Kambic re pending litigation (Beck, Chaet) and removal of RICO action. | ACS | 0.80 |
| 02/06/91 | Reviewed and revised motion to retain special accountant; telephone conference with D. Lippincott re claim; conferred with R. Fishman re same; reconferred with D. Lippincott; telephone conference with K. Brian re administration. | KLK | 1.90 |
| 02/07/91 | Conferred with A. Smith and K. Kambic re certain matters; handled call from creditor. | BMG | 0.50 |
| 02/12/91 | Drafted order re retention of special accountant; telephone conference with K. Brian re administrative matters. | KLK | 1.10 |
| 02/22/91 | Telephone conference with K. Brian re unemployment; drafted letter to M. Schiff re fees. | KLK | 0.40 |

Creditors and Claims

| Date | Description | Init. | Hours |
|---|---|---|---|
| 11/15/90 | Reviewed demand notice from Reinhart Food. Conferred with various contract suppliers re possible assumption of contracts and payment of all or portion of back debt in connection with therewith; conferred with R. Fishman re reclamation notice served by Wisconsin Food Supplier. | LWL | 1.60 |
| 11/20/90 | Telephone conference with G. Levenstein re Lawrence Medical Supply; conferred with A. Smith re same; telephone conference with J. Platakis re same; telephone conference with D. Ruggles re unsecured claim. | KLK | 2.10 |
| 11/25/90 | Reviewed and revised letter to RF Technologies re claim; drafted motion to limit notice of Section 341 Meeting; reviewed reclamation letter from Graybar. | KLK | 1.80 |
| 11/27/90 | Reviewed and revised letter to D. Kamincik re automatic stay and pre-petition claim; telephone conference with L. | KLK | 1.60 |

Gusling re claim; telephone conference with Sears Commerical Credit re claim.

| | | | |
|---|---|---|---|
| 11/29/90 | Telephone conference with Lakeland Newspapers re claim; telephone conference with Meiken Supply re claim; telephone conference with C. Goldberg re filing date. | KLK | 0.50 |
| 11/30/90 | Telephone conference with Fidelity Nursing re claim; conference with Mr. Fishman and Ms. Smith re same; conferred with Ms. Warnke re setoff research. | KLK | 0.60 |
| 12/03/90 | Telephone conference with P. Dillner re Publix claim; conferred with Ms. Smith and M. Goebel re same; reviewed correspondence between Publix and Adventist; reconferred with P. Dillner; drafted letter to P. Dillner re same; telephone conference with K. Brian re claim of Assoc. Commercial Corp.; conferred with Mr. Fishman re same. | KLK | 1.30 |
| 12/03/90 | Phone conferences with L. Shouse re Lawrence contracts, facility and mortgage interest; phone conference with M. Goebel re same; confer with K. Kambic re motion for authority to pay patient deposit refunds; confer with K. re motion for authority to pay patient deposit refunds; confer with K. Kambic and M. Goebel re Publix setoff claim; confer with K. Kambic re Moore reclamation claim. | ACS | 3.70 |
| 12/04/90 | Drafted motion re authorization of patient refunds; conferred with Ms. Smith re same; telephone conference with Jenny Krailter re Rainbow Bread's claim. | KLK | 1.90 |
| 12/05/90 | Telephone conference with K. Brian and Ms. Smith re Pharmacies; telephone conference with Ms. Smith and K. Brian re same and re pre-petition and post petition payment of claims; telephone conference with K. Brian re Greater Marshfield; conferred with Ms. Smith re same; telephone conference with J. Rippeger re Paine Webber; conferred with Mr. Fishman re same, reviewed exhibits for patient refunds motion. | KLK | 2.20 |
| 12/06/90 | Telephone conference with J. Krailter re Rainbow Bakery; telephone conference with J. Brend re Tower Cleaners' telephone conference with K. Brian and M. Goebel re list of creditors. | KLK | 0.60 |
| 12/06/90 | Confer with K. Kambic re settlement of wrongful death suit; phone conference with D. Brummel re Flugstad Mortgage; phone conference with K. Kambic and K. Brian re payment of pre-petition claims including patient refunds; confer with I. Goldberg re Pharmaceutical services claim. | ACS | 1.20 |
| 12/07/90 | Reviewed and revised motion re patient refunds; telephone conference with Bunn Capital Company re status; telephone conference with R. Gitchell re July settlement. | KLK | 0.60 |
| 12/12/90 | Telephone conference with H. Koby re patient refunds; conferred with Mr. Fishman re refunds; telephone conference with Northwest Elevator re claim. | KLK | 0.70 |
| 12/14/90 | Telephone conference with K. Lavard re IBM's claim; telephone conference with R. Gitchell and Ms. Smith re Larson Claim; conferred with Ms. Smith re same. | KLK | 0.80 |
| 12/17/90 | Telephone conference with numerous creditors re 341 Notice; reviewed patient refund motion and exhibit; drafted letter to counsel for H. Lange re unsecured claim. | KLK | 1.70 |
| 12/20/90 | Telephone conference with several creditors re Section 341 notice; drafted order re patient refund motion. | KLK | 1.60 |
| 12/20/90 | Phone conference with S. Miller (Houston Medical) re health care claims letter to S. Miller re same; prepare letter to former employees re pre-petition health care claims; phone conference with J. Franklin re same; phone conference with R. Gitchell re settlement of pending state court suit; confer with K. Kambic re same. | ACS | 1.40 |

| | | | |
|---|---|---|---|
| 12/21/90 | Reviewed and revised motion to compromise claim; conferred with Ms. Smith re same; telephone conference with D. Tracey re same; reviewed legal file re same; telephone conference with creditors re 341 notice. | KLK | 2.20 |
| 12/26/90 | Telephone conference with D. Tracey re claim; reviewed letter from In Home Medical Supply re claim; reviewed and revised motion to compromise Larson claim; conferred with Ms. Smith re same. | KLK | 2.30 |
| 01/02/91 | Telephone conference with numerous creditors re claims; telephone conference with D. Tracey re Larson claim; final revisions to Larson motion; telephone conference with K. Brian re Blue Cross. | KLK | 2.80 |
| 01/03/91 | Telephone conference with numerous creditors re claims; final review of motion and exhibits re Larson claim; telephone conference with K. Brian re Blue Cross. | KLK | 1.50 |
| 01/08/91 | Telephone conference with creditors re claims and status; reviewed case law relating to Medicare. | KLK | 1.60 |
| 01/10/90 | Confer with K. Kambic re miscellaneous claims; phone conference with J. Larson (Nema) re claim. | ACS | 0.90 |
| 01/14/91 | Telephone conference with several creditors re claims; reviewed correspondence from pharmaceutical companies. | KLK | 1.20 |
| 01/17/91 | Appeared in court re Larson claim and Ford's motion to compel rejection; post-motion conference with R. Fishman; telephone conference with creditors re claims. | KLK | 2.20 |
| 01/22/91 | Review of substantial documentation re potential creditors claims; classification and analysis of same; phone conference with K. Brian re patient refund and deposit claims; review Agee Shouse mortgage documentation and confer with K. Brian re same. | ACS | 2.50 |
| 01/23/91 | Phone conference with W. Smith re claims of bondholders; confer with R. Fishman re foregoing matters and status of pending proceedings; phone conference with K. Brian re termination agreements and notes payable. | KLK | 1.30 |
| 01/25/91 | Review letter from M. Goebel and confer with L. Shaw re pre-petition payments and security deposits; confer with B. Graham re AHS–NEMA claim. | ACS | 1.40 |
| 01/26/91 | Conference with K. Kambic re W. Johns claim; conference with L. Shaw re pre-petition patient refunds and security deposits. | ACS | 0.50 |
| 02/01/91 | Telephone conference with various creditors re claims; drafted letters to creditors re patient refunds; telephone conference with J. Hanson of Carroli Pharmach re medicare. | KLK | 2.30 |
| 02/05/91 | Telephone conference with creditors re claims; research re automatic stay and regulatory commissions. | KLK | 2.60 |
| 02/06/91 | Telephone conference with creditor re claims; drafted letter to creditor re patient referral; reviewed file re same; conferred with J. Riley re constructive trust matter. | KLK | 1.70 |
| 02/07/91 | Telephone conference with K. Williams re Notre Dame; conferred with A. Smith re same; reconferred with K. Williams; research re regulatory commissions; telephone conference with various creditors re claims. | ACS | 0.30 |
| 02/11/91 | Rough draft of motion to compromise Rivera claim; conferred with R. Fishman re same; telephone conference with creditors re claims. | KLK | 2.50 |
| 02/12/91 | Telephone conference with creditors re claims; reviewed and revised motion to compromise; conferred with K. Brian re same. | KLK | 2.30 |
| 02/20/91 | Telephone conference with creditors re claims; presented motion to compromise Rivera claim; drafted notice of hearing re same; drafted letter to creditors re proof of claim. | KLK | 2.30 |

| | | | |
|---|---|---|---|
| 02/28/91 | Telephone conference with K. Brian re contractors; telephone conference with creditors re claims; drafted letters to creditors re stay. | KLK | 0.80 |

### Statements and Schedules

| | | | |
|---|---|---|---|
| 11/27/90 | Telephone conference with K. Brian re Statement and Schedules; conferred with Ms. Smith re same; reviewed and revised motion to extend time to file Schedules; reviewed order re same; reviewed information re magnetic tape; telephone conference with J. Burrill re tape. | KLK | 1.40 |
| 12/07/90 | Discussion with K. Brian re magnetic tape and questions on statements and schedules, conferred with Ms. Kambic re same. Began work on statement of executory contracts onto computer format. | BMG | 1.10 |
| 01/14/91 | Meeting with J. Franklin of MRM at his office re health care and workers compensation claimants. Continued work on statements and schedules. Conferred with A. Smith and K. Kambic re same. | BMG | 3.30 |
| 01/16/91 | Conferred with A. Smith re status of schedules; reviewed and analyzed insurance contracts; prepared list of same. | KLK | 2.30 |
| 01/16/91 | Preparation of secured creditors and executory contract schedules; conferences with B. Graham, K. Kambic and R. Fishman re same; preparation of introductory text for schedules concerning basis on which prepared; review executory contracts and confer with B. Graham re same; confer with K. Austin re lien searches and with B. Graham re same. | KLK | 2.30 |
| 01/17/91 | Working on statements and schedules, meeting with K. Kambic and A. Smith to review progress on same, instituting lien searches per A. Smith's request. | BMG | 8.00 |
| 01/18/91 | Working on statements and schedules, conference with A. Smith, K. Kambic and K. Brian re same. Followed up on lien searches ordered. | BMG | 5.80 |
| 01/18/91 | Reviewed termination agreements; reviewed file re Agee matter; reviewed insurance contracts—all for preparation of Statements and Schedules. | KLK | 4.10 |
| 01/21/91 | Drafted letter to J. Franklin re return of materials on health and workers compensation claims. Meeting with K. Kambic and A. Smith re progress on statements and schedules, further work on same. | BMG | 6.50 |
| 01/21/91 | Meeting with A. Smith and B. Graham re schedules; telephone conference with special counsel re terminated litigation; prepared list re same; drafted summaries of certain termination and escrow agreements. | KLK | 4.70 |
| 01/21/91 | Preparation and review of debtor's schedules and statements; miscellaneous conferences with K. Kambic and B. Graham re same. Review approximately 75 executory contracts and unexpired leases, including facility termination agreements. | ACS | 6.50 |
| 01/22/91 | Telephone conference with special counsel re terminated litigation; reviewed and revised list re same; telephone conference with A. Sarna re insurance agreements; reviewed Agee documents; reviewed termination agreements re assignment of receivables; reviewed Medicare agreement list; telephone conference with D. Brummel re same; conferred with A. Smith and B. Graham re schedules. | KLK | 9.50 |
| 01/22/91 | Preparation of debtor's schedules and statements, including executory contracts list; confer with K. Brian and M. Goebel re same; review summaries of executory contracts and several equipment leases; review Asbury Circle termination agreements. | ACS | 4.00 |

| | | | |
|---|---|---|---|
| 01/23/91 | Reviewed and revised statement of contracts; reviewed contracts re same; conferred with A. Smith re same; completed list of insurance; telephone conference with A. Sarna re same; telephone conference with K. Brian re statements; reviewed and revised workers' compensation list; reviewed and revised statements and schedules; conferred with B. Graham re same. | KLK | 12.20 |

**Executory Contracts**

| | | | |
|---|---|---|---|
| 12/27/90 | Reviewed motion to assume PROS agreement on preparation for court, appeared in court re same; telephone conference with Ms. Smith and D. Brummel re commission, drafted letter to M. Goebel re same; final revisions to exhibits to motion to assume executory contracts; telephone conference with D. Brummel re same. | KLK | 2.80 |

**Unexpired Leases**

| | | | |
|---|---|---|---|
| 11/27/90 | Reviewed ALC/Horizon 1987 Agreement. Numerous and lengthy conversations with Chuck Snyder, Scott Alsterda and Mr. Levit re rejection of Horizon leases, rejection of Horizon Agreement, use of ALC licenses after 11/20/90, status of Sun Belt Management contract, indemnification agreement from Sun Belt and regulatory agency approval of transition from ALC to Sun Belt. | RMF | 6.30 |

**Cash Collateral/Financing**

| | | | |
|---|---|---|---|
| 11/15/90 | Conferred with Judge Sonderby's clerk re notice to 20 largest creditors; conferred with M. Goebel re arranging for such notice; conferred with Mr. Pelliccioni re filing of case and hearing on cash collateral order; conferred with certain other creditors re proposed cash collateral order; appeared before Judge Sonderby on motion for entry of such cash collateral order; matter heard; all objections overruled and order entered; conferred with W. Smith after the session re same and re negotiation of financing agreement; worked at home in the evening reviewing in detail latest draft of proposed DIP financing agreement; brought R. Fishman up to date; described state of negotiations with indenture trustees; conferred with R. Baker re research on rights to use money in reserve fund; conferred with W. Smith; dictated demand re notice of bond holders. | LWL | 5.00 |
| 11/26/90 | Conferred with C. Snyder, M. Goebel, R. Fishman and Ms. Kirk re need for immediate relief with respect to use of funds in retirement and reserve funds; reviewed latest cash flow projections and concluded that emergency relief need not be sought; advised Judge Sonderby's clerk and W. Smith accordingly; conferred with R. Baker re results of his research into issue as to Court's authority to authorize use of collateral in reserve funds a property of estate; also conferred with Mr. O'Keefe and Mr. Anvik re effects of termination of operations on value of real estate and personal property comprising the various health center facilities in preparation for testimony to be offered in support of motion to use reserve and retirement funds, if necessary. | LWL | 4.80 |

**Employee Issues**

| | | | |
|---|---|---|---|
| 02/12/91 | Research re claims for retirement plan contributions based upon employee handbooks under Illinois law; research re ERISA cases on participant's reliance on summary plan description. | LRG | 1.00 |
| 02/22/91 | Memo to A. Smith re enforceability of tax-deferred annuity contributions; research re tax matters. | LRG | 1.50 |

| | | | |
|---|---|---|---|
| 02/25/91 | Continuation of memo to A. Smith re tax deferred annuities; legal research re bankruptcy code provisions on executory contracts and claim priorities. | LRG | 2.80 |
| 11/27/90 | Conversation with R. Fishman re regulatory filings re closure of nursing homes in Wisconsin and Indiana. Conference with C. Merkley and C. Panczner re research of Medicare law and certificate of need and licensure laws in Wisconsin and Indiana re closure of nursing homes. Review of findings re same. | JBR | 1.20 |

**Health Care Counseling**

| | | | |
|---|---|---|---|
| 11/27/90 | Conversation with R. Fishman re regulatory filings re closure of nursing homes in Wisconsin and Indiana. Conference with C. Merkely and C. Panczner re research of Medicare law and certificate of need and licensure laws in Wisconsin and Indiana re closure of nursing homes. Review of findings re same. | JBR | 1.20 |
| 11/30/90 | Spoke to Jim Riley and Chris Panczner re letter to State of Wisconsin re Sun Belt operation. Discussed Horizon leases rejection with Chuck Snyder. | RMF | 0.70 |
| 01/14/91 | Telephone conversation with M. Goebel re Cedarwood Living Center re reopening of license relocation hearing; dictating letter to M. Goebel re Meadowbrook Living Center license issue; conference with C. Panczner re Meadowbrook Living Center license issue. | JBR | 0.80 |
| 02/14/91 | Research re cases involving 2–step transactions; conference with J. Riley re final cost report/liability for Medicare overpayment for six nursing homes. | CSP | 3.50 |
| 02/22/91 | Telephone conversation with Ohio Department of Health re Meadowbrook and Northside Manor; conference with J. Riley; drafting letter to M. Goebel re River Pines Living Center Foundation, drafted article of incorporation. | CSP | 1.40 |
| 02/25/91 | Telephone conversation with Ohio Department of Health re Northside license transfer; conference with J. Riley re transfer of Northside license (Ohio), River Pines Foundation incorporation (Wisconsin); drafting letters to M. Goebel re incorporation of River Pines Foundation and status of Ohio licensure change. | CSP | 1.50 |
| 02/27/91 | Review of articles of incorporation for Foundation for River Pines Living Center; review of documents re filing of Medicare final cost reports for Illinois leased homes. | JBR | 1.00 |
| 02/28/91 | Research re Wisconsin tax exemption revenue filings; telephone conversation with Wisconsin Secretary of State and Department of Revenue re tax exemption; drafting consents of directors and waiver of notice for River Pines Living Center Foundation; drafting memorandum re tasks for organizational matters. | CSP | 1.40 |

**Health Insurance Issues**

| | | | |
|---|---|---|---|
| 12/12/90 | Conferred with Mr. Fishman, Ms. Smith and Mr. Goebel re need to move promptly with regard to health insurance situation; reviewed pending motions and orders; dictated and prepared proposed order to be submitted authorizing immediate payment of claims of present employees at presently operated facilities. | LWL | 1.00 |
| 12/18/90 | Phone conference with S. Miller re claims of West Houston Medical Center against Adventist; phone conference with J. Franklin re health insurance claims of employees; letter to J. Franklin re same; prepare letter to former ALC employees re health care claims; confer with L. Levit re same; prepare letter to J. Peliponis re same. | ACS | 3.30 |

| Date | Description | | |
|------|-------------|---|---|
| 12/19/90 | Letter to J. Franklin re authorization to pay health benefit claims; prepare letter to former Adventist employees and health care providers re pre-petition claims; prepare motion to clarify previous orders re payments of health benefit claims; confer with R. Fishman re same. | ACS | 3.80 |
| 01/10/91 | Telephone conference with various creditors re employee health claims; telephone conference with T. Williams re AHS Trust, telephone conference with J. James re same; conferred with R. Fishman and J. Riley re same; reviewed trust documents; drafted letter to L. Holmes re health claim. | KLK | 3.20 |
| 01/14/91 | Confer with J. Franklin re employee insurance programs and claims processing issues; phone conference with B. Wagoner re pre-petition health care claim. | ACS | 0.80 |
| 01/15/91 | Telephone conference with former employees re benefits; telephone conference with D. Brummel re Medical Reimbursement Plan. | KLK | 0.70 |
| 02/11/91 | Phone conference with H. Brown (Mercy Hospital) re health care claims; phone conference with M. Goldenhirsch re D. Cook claim; confer with K. Kambic re health care claims; prepare Motion for Authority to Pay Health Benefit/Workers Compensation Claims; phone conferences with J. Franklin re same. | ACS | 2.20 |
| 02/20/91 | Phone conference with Dr. E. Jamieson re health care claim; phone conference with J. Franklin re health care and workers' compensation claims; prepare motion for authority to pay claims, etc., confer with K. Kambic re miscellaneous claims. | ACS | 2.40 |

---

The Court will reduce R & H's fee request by $20,835.25 (50% of $41,670.50).

B. *Intraoffice Conferences and Meetings.*

 As a general rule, no more than one attorney may charge the estate for intraoffice conferences, meetings and court appearances unless an adequate explanation is given. *See In re Chicago Lutheran Hospital Association,* 89 B.R. 719 (Bankr. N.D.Ill.1988). In *Chicago Lutheran Hospital,* the bankruptcy court stated:

> ... Generally, attorneys should work independently, without the incessant "conferencing" that so often forms a major part of many fee petitions. While some intraoffice conferences may be necessary, no more than one attorney may charge for it unless an explanation of each attorney's participation is given. *In re R & B Institutional Sales, Inc.,* 65 B.R. 876, 882 (Bankr.W.D.Pa.1986).

*Pettibone,* 74 B.R. at 303. While the participation of more than one counsel is sometimes necessary in complex matters and compensation should be awarded accordingly, the Court must emphasize that there is a difference between duplication and coordination of services. *In re Holthoff,* 55 B.R. 36 (Bankr.E.D.Ark.1985). Another example of a kind of work for which only one attorney ordinarily will be compensated is court appearances. When more than one attorney appears in court on a motion or argument or for a conference, no fee should be sought for non-participating counsel. *Pettibone,* 74 B.R. at 303, *citing, Jensen–Farley Pictures,* 47 B.R. 557, 583 [Bankr.D.Utah 1985]. An exception to this rule would be a showing of some specific reason requiring attendance by more than one

attorney at a particular court hearing. *See Holthoff,* 55 B.R. at 40.

89 B.R. at 736.

Because the issue of more than one attorney billing for intraoffice conferences and meetings arises in most large cases, the Court finds it necessary and useful to establish guidelines regarding the billing practices for multiple parties for intraoffice conferences and meetings. The guidelines are premised on the nature of the conference. Accordingly, the Court will allow the following billing practices for the following types of conferences: [1]

■ 1. *Direction Conference.* In a direction conference one attorney directs another attorney to perform a task. Thus, one attorney is active and the other is passive. The Court will only allow the active attorney to bill for his time.

■ 2. *Document Review Conference.* In a document review conference one attorney reviews another's work product. Again, one attorney is active and the other passive. Thus, the Court will only allow the active attorney to bill for his time.

■ 3. *Litigation Conference.* In a litigation conference one or more of the attorneys from the firm participate in a conference with opposing counsel. The key here is participate. All attorneys are active in the conference. Thus, the Court will allow all attorneys to bill for their time.

■ 4. *Status Conference.* In a status conference one attorney advises another as to matters pending in a case and often assigns future work to be performed. Because status conferences incorporate input from everyone involved, the Court will allow all attorneys to charge their time.

■ 5. *Strategy Conference.* In a strategy conference one or more attorneys determine the course of a case. Because strategy conferences involve input from all parties, the Court will allow all attorneys present to bill for their time.

■ 6. *Update Conferences.* In an update conference one attorney merely updates another on a case. No further action is required as in a status conference. Accordingly, the Court will allow only the active attorney to bill for his time.

The Court notes that this list of conferences is not exhaustive or all-encompassing. It merely serves as a guideline. The Court cautions counsel, however, against the excessive use of any of the conferences mentioned above.

■ In this case, the Committee and First Trust object to the substantial amount of time spent in intraoffice conferences [2] and the number of attorneys that billed for attending the First Meeting of Creditors. In its Supplement, R & H explains that the case involved fifteen nursing homes located in three states and was very complex. R & H also states that the case involves critical questions of bankruptcy and reorganization law, health care law, administrative law, employee benefits law, outside litigation and negotiations for the sale of the nursing homes as going concerns. R & H further contends that the case was complicated by the fact that all of the Debtor's assets and operating income were subject to the secured claims of bond holders holding bonds issued under four separate trust indentures with one master trustee and two separate indenture trustees. R & H then explains who was in charge of the case; how tasks were delegated; why tasks were delegated; and the ultimate savings to the estate. Based on R & H's explanation, the Court finds that the substantial amount of time spent in intraoffice conferences was actual and necessary to the proper representation of the Debtor.

Although the Committee alleges that four attorneys attended the § 341 meeting, a review of the entries for January 7, 1991 reveals that Ms. Shuman and Ms. Kambic

---

**1.** The Court notes that these guidelines were first set forth by Benjamin, Berneman & Bruesch in *Packaging Concepts, Inc.,* 89 B 16375.

**2.** The Court notes that as a result of the substantial amount of lumping, it is unable to determine exactly how long was spent on intraoffice conferences and meetings.

attended pre–§ 341 meetings and not the § 341 meeting itself.

■ The Committee also objects to the 128.1 hours of time billed to the Debtor for pre-petition services. Upon reviewing the Application, the Court finds that the time was spent counseling the Debtor and preparing the Petition, Schedules and Statement of Affairs. Accordingly, the Court finds that the time spent was actual and necessary to the proper representation of the Debtor.

### C. Magnetic Tape

■ Upon reviewing the Application, the Court finds that a paralegal spent 7.8 hours on the magnetic tape which is excessive. The Court, therefore, will reduce by fifty percent (50%) the amount of fees requested for the following entries:

Case Administration

| | | | |
|---|---|---|---|
| 10/30/90 | Looking into preparation of magnetic tape for creditor list, spoke to Mr. Fishman, Greg Evans, and Larry O'Grady in Boston re same. | BMG | 1.10 |
| 10/31/90 | Looking into preparing magnetic tape; conferred with Mr. Fishman, Mike Goebel and Larry O'Grady re same. | BMG | 1.60 |
| 11/01/90 | Conferring with Mr. Fishman and checking with the Bankruptcy Court re filing of petition and magnetic tape. | BMG | 0.90 |
| 11/02/90 | Phone conference with Mr. Burrill re information needed for Magnetic Tape and Petition. Calls to the Bankruptcy Court re filing of magnetic tape. Preparing to file petition. | BMG | 1.10 |
| 11/16/90 | Discussion with K. Brian, M. Goebel, L. Levit, and R. Fishman re magnetic tape, schedules, and freezing of bank accounts. | BMG | 0.70 |
| 11/20/90 | Working on magnetic tape issue—calls to various vendors re preparing the tape, call to court re procedure to send out notices ourselves, call to Karen Brian re schedules, discussions with Ms. Kambic and Mr. Fishman re same. | BMG | 2.40 |

Creditors and Claims

| | | | |
|---|---|---|---|
| 11/19/90 | Spoke to Mr. Burill re magnetic tape, spoke to Ms. Kambic re same and re filing of schedules, etc. | BMG | 0.60 |

The Court will reduce R & H's fee request by $273 (50% of $549).

### D. Duplication of Services

The Court notes that Page 25 of the Application contains two entries for the same services. Therefore, as a result of the duplication, the Court will deny the fees requested for the following entry:

| | | | |
|---|---|---|---|
| 01/07/91 | Met in our office with R. Fishman, K. Kambic, A. Smith, M. Goebel, and C. Snyder (later joined by Mr. Andvic and Mr. O'Keefe) in order to prepare for the 341 meeting. Advised generally of procedures to be followed, nature of questions to be expected, etc. Also conferred privately with C. Snyder and M. Goebel regarding issues to come up at 341 meeting; responded to numerous questions by individual bond holders, etc.; conferred with our parties after the meeting re general reaction to what had taken place. | LWL | 3.8 |

The Court will reduce R & H's fee request by $1,140 (3.8 hours at $300 per hour)

### E. Lack of Adequate Description

█ Lastly, the Court will deny the fees requested for the following entry because it lacks sufficient detail to enable the Court to determine whether it was actual and necessary:

Case Administration

| 12/17/90 | Discussions with Ms. Shaw, Ms. Kambic and Ms. Brian re various aspects and issues in case. | BMG | 0.90 |

---

The Court will reduce R & H's fee request by $58.50.

In conclusion, the Court finds that R & H is entitled to $205,061.55 as and for reasonable attorney's fees. Although the Committee requests a thirty-three percent (33%) holdback and First Trust requests a twenty-five percent (25%) holdback, the Court finds that a fifteen percent (15%) holdback is appropriate. Accordingly, the Court presently awards R & H $174,302.32 ($205,061.55—$30,759.23 (15%)).

The Court finds that the Committee's remaining objection regarding the format of the Application and First Trust's remaining objection regarding the reasonableness of the fees are without merit. Counsel should note, however, that in all future applications, the Court requests that the time spent preparing the fee application be set forth in a separate category.

### Expenses

█ Although the expenses requested are small compared to the fees requested, the Court still requires an accurate detailed record which sets forth the reasons for incurring such expenses. *In re Convent Guardian Corp.*, 103 B.R. 937, 939 (Bankr. N.D.Ill.1989). The Court will not assume an expense is necessary. Therefore, R & H has the burden of establishing that it is entitled to certain expenses.

█ Expenses which are overhead and which are included in the hourly rate are not compensable. *Id.; Lindberg Products*, 50 B.R. at 222. Examples of charges which, absent extraordinary circumstances, are overhead are postage charges, messenger charges, and secretarial charges. *See In re Pacific Express, Inc.*, 56 B.R. 859, 866 (Bankr.E.D.Cal.1985); *Lindberg Products*, 50 B.R. at 222; *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. 122, 127 (Bankr.C.D.Cal.1981).

█ In this case, consistent with *Convent Guardian Corp.*, 103 B.R. at 939, the Court will deny the requests for reimbursement for the following expenses because they lack sufficient detail to enable the Court to determine whether they were necessary and because requests for postage charges, messenger charges and secretarial overtime charges are overhead absent extraordinary circumstances:

| Date | Disbursement | Amount |
| --- | --- | --- |
| 11/07/90 | Telecopier Transmittals | $6.00 |
| 11/15/90 | Telecopier Transmittals | 18.00 |
| 11/16/90 | Telecopier Transmittals | 16.50 |
| 11/16/90 | Telecopier Transmittals | 33.00 |
| 11/19/90 | Telecopier Transmittals | 25.50 |
| 11/20/90 | Telecopier Transmittals | 4.50 |
| 11/20/90 | Telecopier Transmittals | 12.00 |
| 11/21/90 | Telecopier Transmittals | 9.00 |
| 11/27/90 | Telecopier Transmittals | 43.50 |
| 11/27/90 | Telecopier Transmittals | 18.00 |

| | | |
|---|---|---:|
| 11/28/90 | Telecopier Transmittals | 27.00 |
| 11/29/90 | Telecopier Transmittals | 4.50 |
| 11/29/90 | Messenger Charges | 10.00 |
| 11/29/90 | Messenger Services | 5.00 |
| 11/29/90 | Telecopier Transmittals | 16.50 |
| 11/30/90 | Telecopier Transmittals | 6.00 |
| 11/30/90 | Postage | 18.00 |
| 11/30/90 | Telecopier Transmittals | 64.50 |
| 12/03/90 | Telecopier Transmittals | 4.50 |
| 12/03/90 | Telecopier Transmittals | 342.00 |
| 12/04/90 | Telecopier Transmittals | 7.50 |
| 12/04/90 | Telecopier Transmittals | 15.00 |
| 12/05/90 | Telecopier Transmittals | 52.50 |
| 12/06/90 | Telecopier Transmittals | 6.00 |
| 12/07/90 | Telecopier Transmittals | 3.00 |
| 12/07/90 | Telecopier Transmittals | 18.00 |
| 12/07/90 | Telecopier Transmittals | 18.00 |
| 12/10/90 | Telecopier Transmittals | 4.50 |
| 12/10/90 | Telecopier Transmittals | 4.50 |
| 12/11/90 | Telecopier Transmittals | 46.50 |
| 12/12/90 | Telecopier Transmittals | 3.00 |
| 12/12/90 | Telecopier Transmittals | 78.00 |
| 12/13/90 | Telecopier Transmittals | 4.50 |
| 12/13/90 | Telecopier Transmittals | 256.50 |
| 12/14/90 | Telecopier Transmittals | 150.00 |
| 12/18/90 | Telecopier Transmittals | 4.50 |
| 12/19/90 | Telecopier Transmittals | 27.00 |
| 12/19/90 | Telecopier Transmittals | 102.00 |
| 12/20/90 | Telecopier Transmittals | 27.00 |
| 12/21/90 | Telecopier Transmittals | 15.00 |
| 12/21/90 | Telecopier Transmittals | 7.50 |
| 12/26/90 | Telecopier Transmittals | 10.50 |
| 12/26/90 | Telecopier Transmittals | 3.00 |
| 12/27/90 | Telecopier Transmittals | 3.00 |
| 12/27/90 | Telecopier Transmittals | 28.50 |
| 12/30/90 | Lexis Research | 25.54 |
| 12/31/90 | Postage | 4.10 |
| 12/31/90 | Lexis Research | 71.50 |
| 12/31/90 | Messenger Services | 25.00 |
| 12/31/90 | Postage | 4.30 |
| 12/31/90 | Messenger Services | 10.00 |
| 01/09/91 | Telecopier Transmittals | 45.00 |
| 01/10/91 | Telecopier Transmittals | 9.00 |
| 01/11/91 | Telecopier Transmittals | 12.00 |
| 01/11/91 | Telecopier Transmittals | 12.00 |
| 01/12/91 | Telecopier Transmittals | 30.00 |
| 01/14/91 | Telecopier Transmittals | 72.00 |
| 01/15/91 | Telecopier Transmittals | 12.00 |
| 01/15/91 | Telecopier Transmittals | 12.00 |
| 01/15/91 | Telecopier Transmittals | 12.00 |
| 01/16/91 | Telecopier Transmittals | 24.00 |
| 01/17/91 | Telecopier Transmittals | 186.00 |
| 01/17/91 | Telecopier Transmittals | 21.00 |
| 01/17/91 | Telecopier Transmittals | 33.00 |
| 01/18/91 | Telecopier Transmittals | 6.00 |
| 01/18/91 | Telecopier Transmittals | 48.00 |
| 01/22/91 | Telecopier Transmittals | 9.00 |
| 01/23/91 | Messenger Services | 5.00 |
| 01/23/91 | Messenger Services | 15.00 |
| 01/23/91 | Messenger Services | 15.00 |
| 01/23/91 | Telecopier Transmittals | 72.00 |

| | | |
|---|---|---|
| 01/24/91 | Telecopier Transmittals | 6.00 |
| 01/28/91 | Telecopier Transmittals | 9.00 |
| 01/29/91 | Telecopier Transmittals | 27.00 |
| 01/30/91 | Telecopier Transmittals | 4.50 |
| 01/31/91 | Postage | 7.10 |
| 01/31/91 | Air Courier | 39.00 |
| 01/31/91 | Secretarial Overtime | 71.60 |
| 01/31/91 | Postage | 1.50 |
| 01/31/91 | Postage | 34.40 |
| 01/31/91 | Air Courier | 29.00 |
| 01/31/91 | Telecopier Transmittals | 4.50 |
| 02/04/91 | Messenger Services | 5.00 |
| 02/05/91 | Telecopier Transmittals | 4.50 |
| 02/05/91 | Telecopier Transmittals | 4.50 |
| 02/05/91 | Messenger Services | 32.48 |
| 02/05/91 | Messenger Services | 15.75 |
| 02/05/91 | Messenger Services | 15.75 |
| 02/06/91 | Telecopier Transmittals | 27.00 |
| 02/06/91 | Messenger Services | 15.75 |
| 02/06/91 | Messenger Services | 15.75 |
| 02/06/91 | Messenger Services | 5.00 |
| 02/06/91 | Messenger Services | 5.00 |
| 02/06/91 | Messenger Services | 5.00 |
| 02/11/91 | Telecopier Transmittals | 12.00 |
| 02/11/91 | Telecopier Transmittals | 27.00 |
| 02/14/91 | Messenger Services | 5.00 |
| 02/15/91 | Telecopier Transmittals | 7.50 |
| 02/18/91 | Telecopier Transmittals | 30.00 |
| 02/20/91 | Messenger Services | 9.25 |
| 02/20/91 | Messenger Services | 5.00 |
| 02/20/91 | Messenger Services | 20.00 |
| 02/20/91 | Telecopier Transmittals | 42.00 |
| 02/21/91 | Lexis Research | 31.00 |
| 02/22/91 | Telecopier Transmittals | 63.00 |
| 02/25/91 | Postage | 17.04 |
| 02/25/91 | Telecopier Transmittals | 33.00 |
| 02/25/91 | Telecopier Transmittals | 13.50 |
| 02/25/91 | Postage | 34.95 |
| 02/26/91 | Telecopier Transmittals | 3.00 |
| 02/26/91 | Telecopier Transmittals | 27.00 |
| 02/27/91 | Lexis Research | 16.00 |
| 02/28/91 | Miscellaneous (Information Systems) | 88.34 |
| 02/28/91 | Miscellaneous (Westlaw) | 255.09 |
| 02/28/91 | Lexis Research | 224.38 |
| 02/28/91 | Messenger Services | 64.50 |
| 02/28/91 | Lexis Research | 16.00 |
| | Total | $3,799.57 |

Additionally, consistent with *Convent Guardian,* 103 B.R. at 944, the Court will deny R & H's request for the reimbursement for local meals and for cabfare to and from work because the Court is unable to determine whether the expense was necessary and reasonable:

| Date | Disbursement | Amount |
|---|---|---|
| 12/31/90 | Luncheon Meeting | $ 57.13 |
| 12/31/90 | Luncheon Meeting | 49.09 |
| 01/18/91 | Cabfare (secretary) | 13.00 |
| 01/18/91 | Meal Expense (secretary) | 5.00 |
| 02/15/91 | Luncheon Meeting | 81.27 |
| | Total | $205.49 |

■ The Court will reimburse R & H $6,492.34 for expenses incurred.

Although R & H requests that the Court allow it to apply the $75,500 of the $100,500 retainer against said award, the Court orders that R & H shall apply the entire retainer against the award. If R & H were allowed to hold part of the retainer, it would be simultaneously collecting interim compensation while maintaining a retainer. All other professionals would have applied their retainers. Thus, R & H would have an unfair advantage over all other professionals.

IT IS HEREBY ORDERED THAT Ross & Hardies is awarded $174,302.32 as and for reasonable attorney's fees. The balance of the fees, $30,759.23, which constitutes the fifteen percent (15%) holdback, will be considered at the time of the final hearing on attorney's fees. R & H is also awarded $6,492.34 for expenses incurred. Ross & Hardies shall apply the entire $100,500 retainer against said award. IT IS HEREBY FURTHER ORDERED THAT the Debtor shall pay the balance of said award within twelve (12) days of the date of this Order.